SMITH *v.* MEMPHHIS & L. R. R. Co.

*(Circuit Court, W. D. Tennessee. July 3, 1883.)*

1. MASTER AND SERVANT—DAMAGES FOR INJURY—RAILROADS—DEFECTIVE TRACK —OWNERSHIP IN ANOTHER COMPANY.

Where an employe has been injured by an accident caused by a defective railroad track, the company employing the injured plaintiff cannot escape liability by showing that the track is owned by another company, and only used by the employer under a contract which binds the owner to make repairs to be paid for jointly by the two companies. In contemplation of the law of master and servant it is the track of the master no matter what the source or extent of his title

2. SAME—NEGLIGENCE OF A FELLOW-SERVANT—ENGINEER AND SWITCHMAN.

Where the injured plaintiff was a switchman, and one of the alleged causes of the accident was excessive speed of a locomotive on which the plaintiff was riding in the discharge of his duties, the engineer and switchman are fellow-servants engaged in a common enterprise, and if the excessive speed be the sole cause of the accident the plaintiff cannot recover, where it appeared there was due care in the selection of the engineer.

3. SAME—COMBINED CAUSES OF INJURY—DEFECTIVE TRACK AND EXCESSIVE SPEED OF LOCOMOTIVE.

But where the cause of accident is a defective track, as to which the employer has been negligent, combined with the negligence of the engineer in running the locomotive at excessive speed, the employer is liable notwithstanding the negligence of the fellow-servant.

4. SAME—EVIDENCE—PROOF OF NEGLIGENCE—PROBATIVE VALUE OF THE FACT OF ACCIDENT.

The mere happening of an accident is not *prima facie* evidence of the negligence of the employer; but where the cause of the accident is known to be some particular defect in the tools, machinery, or other appliances, the existence of the defect is of itself evidence of negligence for which liability attaches, unless the employer can satisfactorily explain by the proof that he has not been negligent in the matter of providing against the defect.

**5. SAME—CONTRIBUTORY NEGLIGENCE—RIDING ON LOCOMOTIVE CONTRARY TO RULE FORBIDDING IT.**

Where there was posted in the cab of a locomotive a notice that "No one allowed to ride on the engine except engineer and fireman," and the plaintiff was riding there when injured, *held*, that if the plaintiff knew of the regulation and was there in violation of it, he could not recover unless the jury found that the regulation did not apply to plaintiff, under the circumstances of this case, or had been waived by non-enforcement against him and other employes engaged about the locomotive as a switch-engine.

**6. SAME—HAVING CONTROL OF THE LOCOMOTIVE—PARTICIPATION IN THE NEGLIGENCE.**

If the plaintiff participated in a fool-hardy enterprise of running the locomotive at excessive speed, either by advising or instigating it, or neglecting to expostulate, and was in such relation to the engineer as that he could by his order control the speed, he contributed to the injury and cannot recover.

**7. SAME—KNOWLEDGE OF DEFECT.**

If the plaintiff knew of the defective track and continued to use it without complaint, he contributed to his injury and cannot recover.

**8. SAME—EXCESSIVE DAMAGES—NEW TRIAL.**

Where the plaintiff's foot was crushed so that he became a cripple by the loss of two toes, and several bones from the instep, the court refused to set aside as excessive a verdict for $5,500 damages.

**9. SAME—WRIT OF ERROR—PRACTICE—REMITTITUR—DEFEAT OF APPELLATE JURISDICTION.**

The defendant, after verdict, having moved for a new trial, because, among other grounds, the damages were excessive, the plaintiff offered to remit $750, whereupon defendant withdrew that ground of his motion for new trial, and the plaintiff asked leave to enter a voluntary *remittitur* for the same amount, which being objected to by defendant the court refused, as it would defeat the appellate jurisdiction of the supreme court.

### Motion for New Trial.

The plaintiff, being a switchman employed by the defendant, was ordered by the yard-master to go with the switch locomotive to the transfer-boat and bring away the passengers, the engineer being present and the order given to both, or in the presence of both, there be-being conflict in the proof as to whether the switchman or the engineer was to be considered as in charge of the expedition. There was no conductor. A flat car was attached to the locomotive used in place of a tender. Defendant's witnesses proved that the plaintiff's proper place was on this car, as there was printed in the cab of the engine this notice: "No person allowed to ride on this engine except the engineer and fireman." The plaintiff's witnesses proved that he had never seen this notice, and that he often rode with the yard-master and other employes about the yard on this engine and had never been forbidden; that his duty frequently required him to ride on steps around the engine provided for the purpose. On the way to the boat the locomotive ran off the track, and the plaintiff, who was riding in the cab, was severely injured by his foot being crushed, losing two of his toes, and several bones from the instep, so that he was badly and permanently crippled.

The proof imputed negligence to the defendant in not having a sufficiently safe road-bed and track, and in excessive speed of the locomotive. The defects of track sought to be proven were an un-

even bed, not ballasted, and which, at the place of the accident, was allowed to become wet and "sobby" from drainage from adjacent lots, and a rough track of old and worn rails that were imperfectly jointed with worn and unsafe "chairs;" the rail at this particular place being much laminated, split, and broken, though the proof was conflicting as to whether the break was caused by this locomotive running off, or previously existed.

The plaintiff's witnesses thought the speed at which the engine was running was excessive for a "pony" engine, and that this excessive speed contributed to the accident. They estimated the speed at from 15 to 20 miles per hour. The defendant's witnesses, including the engineer, proved that the speed was not excessive, and not more than 12 or 14 miles per hour, and that the locomotive could be safely, and was frequently, run at that or a greater rate of speed. The defendant proved, and the plaintiff conceded, that the locomotive was especially constructed for a switch-engine, and could be safely run at the speed indicated by the proof, and that the engineer had been long employed in this capacity, was sober, discreet, and efficient, and selected with especial care for this particular work about the yards and transfer-boat, and that he was not drinking on this occasion.

The yard-master testified that he had received orders from the city authorities not to run at greater speed than six miles per hour, and had so instructed the engineer, but that their business required and they frequently ran at greater speed.

The plaintiff was asked in cross-examination if they were not very hilarious on the way to the transfer-boat, and replied: No; only that when he got on the cab, after the yard-master had told them to hurry up, the engineer said to him he was going to make his hair stand on his head, and that he replied to the engineer, he could not do it; and when further asked why, if he thought they were going too fast, he did not expostulate and order the engineer to reduce the speed, he replied that it was none of his business to do so, as he had no control of the locomotive or the engineer. The engineer and yard-master testified that the engineer was under the control of the plaintiff, and the engineer that he obeyed his orders. The cross-examination by plaintiff tended to prove that this was based on the obedience of the engineer to the switchman while throwing switches and coupling and uncoupling cars, and that plaintiff had no other control than that of giving signals while thus engaged, and that on this expedition he had no other duty than to handle the switches, and couple or uncouple the cars they were to bring off the boat.

The defendant proved that the track belonged to another company, the Louisville & Nashville, and was used by the defendant, as well as by other railroads, under a contract which bound the Louisville & Nashville Company to keep it in proper repair at the joint expense of the companies using it.

*Wright, Folkes & Wright,* for plaintiff.

*B. C. Brown* and *Weatherford & Estes,* for defendant.

HAMMOND, J., (*charging jury.*) Every man who engages in a hazardous employment takes all the ordinary risk of injury from those inevitable casualties incident to the business he engages to do, including the carelessness of his fellow-employes who work with him, if they have been selected by the common employer with due care as to their skill and capacity to do the work required of them. The master, as the law calls the employer, is under an obligation to furnish for the work of the servant safe tools or appliances with which the work is to be done, including capable fellow-servants, and if any injury results from a neglect in this respect, he is liable to the servant for the injury. There is no difficulty about this general proposition, but nearly always great difficulty in applying it, and the so-called exceptions to the rule are rather the difficulties of application than exceptions to it, and in almost all instances will be found to be merely the correction of attempted misapplication.

Was the accident by which the plaintiff was injured one of those casualties for which the master is not to blame, and a misfortune resulting from the ordinary hazards of the plaintiff's employment? If so, then the defendant company cannot be liable. The solution of this question depends on your conclusions of fact from the proof as to the cause of the derailment of the engine.

It is conceded by the plaintiff there was no proof of any negligence in the selection or retention of Davis, the engineer, and no proof of a defective engine, and these allegations of the declaration may be dismissed from our consideration.

The negligence imputed to the company is a failure to supply and maintain a sufficient track, and the carelessness of the engineer. It will be convenient to consider separately these imputations of negligence, as the rules of law will depend largely upon the view you take of the facts. The natural order of your inquiry will be, first, what caused this accident?

*First,* as to the track. It was clearly the duty of the railroad company to furnish a reasonably safe track. It was not, I think, compelled to furnish the best style of track known to the art of railroad building, but only such as was reasonably safe for the particular uses of this track in the yards of the company for the purpose of transferring cars from the river to the depots in the city. It was the duty of the company to furnish a track that was safe for that business, having regard to the uses of it, the rate of speed, etc., at which the company desired to, or were capable of using it, and they were bound to maintain the track in a safe condition. If you find, therefore, that the track was not safe for the purposes that this plaintiff was required to use it, and this condition of the track caused the accident, the defendant is liable, unless the plaintiff contributed to his own injury, as to which further instructions will be given you. And if you find that Davis, the engineer, ran the engine at too great a rate of speed, and thereby contributed to the defective track as a cause of accident, the company is still liable, unless again the plaintiff shared in or contributed to the high speed by directing it or failing to control it, if he had the power, because, if the track was defective, the company cannot excuse its negligence in that matter by the fact that the carelessness of a fellow-servant jointly caused the accident. It is only where the carelessness of a fellow-servant is the sole cause of the injury, and there is no neglect of the master, that the latter is excused. If, therefore, you find that the engineer was not using an improper rate of speed, and the accident was caused solely by defective track, the defendant would be liable, for it was its obligation to keep the track in order; and the fact that the track belonged to another company does not relieve the defendant. For that occasion it was defendant's track, in relation to its duty to the employes of defendant. If you believe, from the proof, that the engineer was not running at an im-

proper rate of speed, there is no carelessness proved on his part, and all question of negligence by a fellow-servant, so much argued in the case, is out of the way. The plaintiff's witnesses say that the speed was from 17 to 20 miles an hour, according to their varying estimates, and those of the defendant that it was not more than 12 or 14. I do not pretend to be accurate as to these statements, and leave the precise proof for your consideration, using the above statement only to say that there is no direct proof on either side offered to show what was a proper rate of speed. The engineer testified that he frequently ran that fast; the yard-master that he had given orders, based on a city ordinance, not to run over six miles per hour. Now, as between the city and the parties interested, it may have been a violation of the ordinances, if any there were,—as to which we have no proof,—to run more than six miles; but I do not think this requirement of the city is any criterion of judgment for us in determining what was a proper rate of speed. As between these workmen and the company they might use any higher rate of speeed they thought necessary for the transaction of their business which was safe to use, considering the circumstances of the track, nature of the business to be done, etc. It was the duty of the engineer to obey the yard-master and the ordinance of the city, if there was one; but, looking at the speed as a contributing cause of the accident, I think to exceed the six miles was not negligence, if, the ordinance out of the way, it was safe to exceed it with the appliances they were using, and that it would not be negligence to go faster than the ordinance required, nor as fast as they might reasonably go over a railroad track situated as this was in its relation to the defendant's business. There is some proof tending to show that there was occasion to hurry to the transfer-boat, which had been whistling for the engine; and if you find that the engineer, or the plaintiff and engineer both, in executing the order to go to the transfer-boat, had occasion to hurry, and ran the engine at a reasonable rate of speed, considered with reference to the condition of the track, the business they had in hand, and their usual custom, no negligence can be imputed to them, although the rate of speed may have contributed to cause the accident. Hence, if you find, on all the facts, that there was no improper rate of speed, questions of carelessness on Davis' part are out of the case. If you find, however, that the speed was excessive, the next inquiry is, did the excess cause or contribute to the accident? If you find it a sole cause, the relation of Davis to the plaintiff becomes important, and the conduct of both on the occasion should be scrutinized. If you believe that on this occasion Davis was under the control of the plaintiff, and bound to act as he was directed, and that the speed was under plaintiff's control through his power to forbid Davis to run at that rate, and that the rate of speed was so excessive as to either cause or contribute to the accident, the plaintiff cannot recover. In determining this you are to look to the respective duties of the two, their general relations to each other under the regulations of the company or the orders of the yard-master, and the particular situation they were in towards each other in this expedition to the transfer-boat.

If the plaintiff was not the superior, but the inferior or equal, of the engineer, they were, no doubt, on the facts of this case, and on this particular occasion, fellow-servants in the contemplation of the law; if you believe that, from their relation or association with each other, they could by their protest, expostulation, or advice influence each other as persons engaged in a common purpose of running this engine to the transfer-boat. But assuming that you find them fellow-servants, what is the result as applicable to this case? If the accident was caused by a joint contribution of defective track and careless conduct of the engineer, the company is still liable; but if the high rate of speed was the only cause of the injury, the plaintiff cannot recover if they were fellow-servants. If the plaintiff contributed to the injury by engaging in a fool-hardy enterprise of running this engine at excessive speed by advis-

ing it actively, or ordering it or consenting to it, he was himself negligent, if this rate of speed either caused or contributed to the accident, without reference to whether he was a fellow-servant or not, if he knew of the danger and so conducted himself. If the plaintiff knew of the defective rail and its danger, and continued to use it without informing his employer, he contributed to his injury.

If the plaintiff's proper place was elsewhere on this engine than in the cab, and he knew of the printed sign that none but the engineer and fireman should ride on the engine, he was there in his own wrong and contributed to the injury, unless you find that the regulation was not enforced, and that he and the other switchman were in the habit of riding in the cab, notwithstanding the regulation, without objection from the engineer, or other agents of the company. If the switchmen, or this plaintiff, were permitted to habitually ride on the engine, this can be no contributory negligence. The rule is that if the plaintiff be himself negligent or careless in his conduct, that, but for his own negligence, he would not have been injured, he cannot recover. But these are questions of fact for you to determine. Negligence is not presumed on either side, but must be proved. I do not think the mere happening of an accident proves negligence, *prima facie*, but that if it be proved that the accident occurred by reason of a particular defect, if the defect be of a kind which the jury can see, from the circumstances of the case, that there must have been negligence in not curing the defect, this is *prima facie* evidence, and sufficient to fix the liability of the defendant, unless it can explain that it was not negligent in regard to the defect by showing that it used due care; and the burden is then on defendant to show this due care and diligence. Contributory negligence of the plaintiff is no more to be presumed than the other. It is for the defendant to prove that the plaintiff's negligence contributed to the injury.

If you find for the plaintiff, the question comes to you, how much shall be allowed for damages? This is not, in my opinion, a case on the proof for what is called punitive damages, or smart-money; but he is entitled to compensation for such injury as he has sustained, if you find the defendant has been negligent; and this is a matter for you to determine. He is entitled to only a fair money compensation for the injury he has received. You are not allowed to give damages on any sentimental theory of compensating pain and anguish or suffering. Whatever pain or suffering the plaintiff endured as a part of his injuries, or has become permanent in its character, is proper for your consideration, but only as a part of his injuries. You are not allowed to consider whether he is a rich man or a poor man, or a man of family, and there has been no proof offered or admitted on these points. You look to him as a man engaged in earning money by his labor, and to his injuries, to see how far they have impaired his capacity to work or discharge the duties of his life, and whether the injury is of a permanent or temporary character, of a serious or slight nature, and only from the proof in the case estimate the damage to him and the sum that will compensate him. For a merely slight injury that is temporary there can be no large damage; and for one that is permanent, but does not seriously injure the man, there can be no occasion for large damages; and in no event should you act from any sentimental or exaggerated estimate of injury received. Much has been said about the tendencies of juries to act from prejudice and decide against railroads. I am glad to say that in this court our juries act, so far as I know, with freedom from such prejudice, and you should act impartially and shut your eyes to all consideration of this kind or other prejudices, and do justice between these parties fairly and impartially. I believe you will, and I leave the case with you in perfect confidence that you will act in determining all the questions submitted to you with justice, impartiality, and honesty.

After verdict for the plaintiff in the sum of $5,500 the defendant moved for a new trial for errors committed by the court in instructing the jury, because the damages were excessive, and for newly-discovered evidence.

The affidavits of newly-discovered evidence detail that the track-walker of the defendant had noticed the laminated or split rail the day before the accident, and reported it to the section "boss" of the Louisville & Nashville road, who replied that he would give it attention, but that the rail would last a long time yet. They further show that this section "boss" is now dead, and that the defendant did not know before the trial of the track-walker's whereabouts, he having left defendant's employment.

The plaintiff offered to remit $750 of the verdict, whereupon the defendant abandoned the claim of excessive damages as a ground for new trial, and the plaintiff then moved for leave to enter a voluntary *remittitur* of that amount.

HAMMOND, J. The disputed questions of fact in this case were left fairly to the jury, under instructions that seem to me quite favorable to the defendant, and about which it should not complain. The Louisville & Nashville Railroad Company may be liable as a common carrier to the plaintiff, or it may be to the defendant on the contract to repair, or as a carrier of its cars and servants; but this cannot affect the liability of the defendant to the plaintiff as master. Its liability does not depend at all upon the law of common carriers, but upon that of master and servant, and the cases pertinent to an inquiry under circumstances like these, where a passenger is injured, do not apply here. In that case, where the roads bear the relation these do to each other in respect of their several or joint liability as carriers of the passenger, altogether different principles apply, and we do not consider them. I do not think they furnish any analogy for this case, even though, as counsel remarks, the result may be that an employe may recover against defendant, while a passenger could not. I do not undertake to say how this may be as to passengers. All masters are bound to furnish their servants with suitable and reasonably safe tools and appliances for the work they are required to do, and the sources of their title to the tools, and its extent, whether owned by them, leased, borrowed, or otherwise placed in their possession for use, are wholly immaterial. It is no concern of the servant under what contract or by what title the master owns or uses the tools; as between them, they are the tools of the master, and he is liable to the servant for their defects. This railroad, as between the plaintiff and defendant, was the railroad of the defendant, and it has been properly held liable to him as its servant. This seems to me self-evident.

The other objections taken to the charge are not tenable; but it is useless to go over them, as they were fully considered at the trial.

The jury has found the facts against the defendant, and I am satisfied with the verdict.

I cannot say that it is excessive, when the case is clear that a useful, energetic, and industrious man has been crippled for life by having his foot crushed, and sustaining a loss of two of his toes and many of the metatarsal bones. Unless the verdict is so large as to demonstrate that it is the product of the prejudice or passion of the jury, or so out of proportion to all fair consideration of the facts of the case that the court can see that something has misled or improperly influenced the jury, there should be no interference with their function of assessing the damages.

I do not think the fact important that the plaintiff is now earning larger wages in another employment than he did with defendant, or that it should be taken against him. This may be factitious, or due to his superior energy, and a determination to succeed in spite of all misfortune; such a quality should not, at least, count against him, if not in his favor.

The plaintiff's offer to remit $750 must be denied, for the sole reason that it would deprive the defendant of a writ of error by defeating the jurisdiction of the appellate court. *Thompson* v. *Butler*, 95 U. S. 694. In another case I declined for the same reason, after the trial had commenced, to allow a plaintiff to amend his declaration by reducing the *ad damnum* of the writ. I am not sure how far the court should go in thus limiting the power of amendment or *remittitur* simply to preserve the privilege to the other side of a resort to a higher court; but it seems just that the plaintiff should not be allowed, all through the case, to determine whether there shall be such a resort to an appellate court; to preserve it for himself by seeking a larger verdict than the jury gives, and denying it to the defendant by remitting if the jury gives more than the amount required to invoke appellate jurisdiction. Where it clearly appears that the object is to defeat the appellate jurisdiction, I am disposed to hold the plaintiff to the amount he demands in his writ and declaration, or receives from the jury. The supreme court says in the above cited case that the trial court should not allow the reduction to be made "in a meritorious case." This is a difficult rule of judgment for a discretion in the trial judge, that seems not to be subject to any review. I doubt if there be any merit in the proposed writ of error in this case, for it appears to me plain enough; but I doubt still more the value of any trial judge's opinion on that question, and prefer to remit its decision to the appellate court.

Overrule the motion.

See *Woodworth* v. *St. Paul, M. & M. Ry. Co., ante,* 282, and references.