Adams, J.
This case is in this court on error to reverse a judgment recovered by Relie Ullom, Administratrix, against the Railway Company in the court of common pleas. The action is brought under the provision of section 6134 of the Revised Statutes for damages for causing the death of Paul Ullom.
•The petition sets out,at considerable length, the appointment of the plaintiff as administratrix of the estate of Paul M. Ullom, deceased; that Paul M. Ullom left surviving him, Ettie Ullom, his wife, now his widow, and a child unborn at the time of the accident, but born on the 4th day of March, 1897. Stating briefly the gist of the negligence charged against the railroad company, it is alleged in the petition that it is a corporation duly organized under and in pursuance to the laws of the state of Ohio, and now owns and operates a line of railroad extending from the city of Cleveland, Cuyahoga county, Ohio, westward through the county of Crawford, through the city of Galion in said county, and state of Ohio.
Tue gist of this petition is that the railroad company, at a certain point in Galion, had negligently, carelessly and unlawfully failed to keep and maintain a blocked or filled frog, and on the contrary, they had allowed it on the 7th day of January, 1897, and prior thereto, to be unblocked or unfilled, and they had allowed it to be in that condition some time prior thereto.
That Paul Ullom was a night switchman in the employ of defendant company, and had, on the 7th day of January, 1897, in the course of his employment, been under the control and direction of the night yard-master of said yards, who was the servant of the said defendant, and who issued his orders to the foreman of said switching crew; and that Paul Ullom, in uncoupling some cars that were about to be set in upon a switch, stepped between these cars, and that his foot was caught in this unblocked frog, and that he was struck by the car and thrown down and injured so that he died on the same.day.
The petition sets out that at and before the time of ;the injury, the defendant had notice and knowledge of said unlawful and unsafe condition of the frog, but that Paul Ullom *515 did not know, and had no means of knowing, that the frog wag not filled or blocked; and that in the darkness, it waa impossible for him to see either the position or condition of the same.
. The answer admits some of the allegations of this petition; admits the appointment of .plaintiff as administratrix; admits Paul M. Ullom died on the 7th day of .January, 1897; admits it is a corporation, duly organized, under and in pursuance to the laws of the state of Ohio: admits, that it owns and operates a line of railway extending from the city of Cleveland, through the county of Crawford, the city of Galion and state of Ohio, and that it did so own and operate said line on and prior to the 7th day of January, 1897. Defendant denies each and every other allegation,.in said petition of plaintiff therein not expressly admitted or denied. And the answer further avers that the injury in the petition described, if any there was, was caused by the fault and negligence of the decedent himself.
There is a.reply to that denying the allegations of .contributory negligence. That answer put in issue all the air legations of the petition as to the fact as to who were the wife and child of the deceased, and denies that his death was the result of the acts set out in the petition; and denies all allegations of negligence on the part of the railwsy company; and the reply of course, puts in issue the contribuí tory negligence of the decedent, Paul M. Ullom.
The cause was tried to a jury, and resulted , in a verdict for the plaintiff; and there are very numerous exceptions in this record as to the admission of evidence; as to the charge of the court as given, and numerous exceptions to refusals to charge as requested by the defendant below. The question is made of misconduct on the part of the trial judge who tried the case.
The act found in 85 Ohio Laws, page 105, which is section 8365-18, requires railway companies to block or fill frogs and guard rails, except on bridges; and that the railway company is required by law, to block its switches, is an important fact in this suit.
The fact that it is charged that the railway company has omitted to do or perform some act, or discharge some duty which is imposed upon it by statute, does not change the *516 law of the state in regard to the contributory negligence that may be charged against the party receiving the injury. That has been decided by the supreme court in 58 Ohio St., 167, the case of Hess v. The Columbus, Sandusky & Hocking Railroad Co. I will not attempt in this opinion, to take up all of the assignments of error, but will take them up somewhat in the order that they were argued upon the hearing.
There is an objection of the railway company to evidence being admitted as to the distance and route taken in carrying Paul Ullom after the accident, from the scene of the injury to his home. We see no proper place for that kind of evidence in this case. But we cannot see how it was material, how it would have affected the controversy — the issue between the parties, either way.
It is said that the court erred in the admission of evidence — of the testimony of Struble. This is the question: “You may state, Mr. Struble, take it in the month of January, at the hour of about 4:45 in the morning, when it is dark, and you are engaged in switching cars upon the track, with the shadow cast by the cars and the darkness of the night, would it be possible for a switchman stepping forward to uncouple two cars from the train, to determine where a frog is situated, or whether it is blocked or unblocked?” The defendant objected to that question, and that was overruled by the court, and defendant excepted. The answer is: “It would be impossible for him to tell it.” The previous examination of the witness had shown his experience in the business.
There are two cases in Ohio, that we think throw some light upon the question, as to whether or not, that evidence was properly admitted as opinion evidence. In a case in the 11 Ohio St., 333, our supreme court says: “In an action to recover damages against a railroad company for tho killing of plaintiff’s horse by means of the negligence of the servants of the company in running and management of a locomotive and train, the engineer in charge of the Idcomotive at the time of such killing, who saw the horses when they came upon the track, who is shown to be acquainted with the business of running railroad locomotives and trains, and had been engaged in such business for five *517 years, is competent to testify as an expert upon questions in respect to the management of locomotives and trains, and to give an opinion whether, in view of the distance between the engine and the horses when the latter came upon the track, it was possible to avoid the injury complained of.”
And in the case of the Railroad Co. v. Schultz, 43 Ohio St., 270, in an opinion by Judge Owen, there is a very exhaustive review of the authorities upon the question of the admissibility of expert testimony and the admissibility of opinion evidence by non-expeits. And on page 282 of that opinion, the learned Judge says: ‘‘A few general propositions are submitted, which, it is believed, fairly reflect the current of authority on the subj'ect of the admissibility of the opinions of witnesses as evidence. ” I omit the first three paragraphs, but paragraph four reads: ‘‘In matters more within the common observation and experience of men, non-experts may, in cases where it is not practicable to place before the jury all the primary facts upon which they are founded, state their opinions from such facts, where such opinions involve conclusions material to the subject of the inquiry.”
It is true that, in the Schultz case, the question that the. court had to decide was, whether non-expert witnesses could express an opinion to the jury as to whether or not the fence was sufficient to turn stock. And the court held that where witnesses who show no other qualifications than that they had seen the fence, that it was error to allow to go to the jury, their opinion as to the sufficiency of the fence to turn.stock, and it is said that those witnesses could have described the fence, the condition that it was in, as they saw it, and the members of the jury would be as competent as those witnesses, to say whether or not, the fence was sufficient to turn stock. But tested by the rule laid down on page.282, we think that the admission of the evidence in the case at bar comes within this rule; that it is a case where it is not practicable to place before the jury all the primary facts upon which they are founded, and there is no exception in the record in that respect.
At various places in this record, the counsel for the plaintiff below attempts to prove, by secondary evidence, the contents of certain written reports.made by the different *518 employes of the railway company. There is considerable Controversy in the court of common pleas, between counsel for the respective parties. Counsel for the plaintiff below 'claims that the attorney on the other side promised to have these reports in court and furnish them; that was denied on the other side. There was an offer made, or suggestion made by counsel for plaintiff, that he would put the opposing counsel upon the witness stand, and the other attorney declined to be sworn, and he was not sworn. Counsel for defendant in error made his professional statement as to what the arrangement had been, and introduced in evidence, a letter from the attorney for the railway company, written a week before the trial commenced, in which the statement was made that the reports were the private property of the company, and would not be produced upon the trial, and counsel should govern himself accordingly.
The court admitted parol evidence as to what was contained in these written reports — written reports of the occurrence of the accident to Ullom, and these reports contained, or were made up from statements that were gathered from the parties who witnessed the circumstances surrounding this transaction, and, as one witness says, from statements received from Ullom himBelf. Counsel for the defendant in error contend that, because the statute, section 251 requires presidents or other officers in charge of railway companies to make reports of accidents and of injuries to employes and passengers, to the state commissioner of railways, those reports are the acts of the company, and that therefore any admissions or statements made in those reports are evidence on the trial of a case, to establish the truth of the facts that are recited in those reports.
' • We pass by the question of whether or not this was a case for secondary evidence. Counsel had not availed himself of the provisions of sections 5289 & 5290, by motion or notice, to require the other side to produce books or documents that he might require in evidence, but he relied upon the arrangement that he claimed to have made with opposing counsel. We dispose of this case just as we would dispose of it if these reports — written reports — themselves had been offered in evidence. Are they competent evidence to establish the facts that were id issue between these par *519 ties? Counsel for the defendant in error cited the Ohio code of evidence, and in that the citation of the case of the Baltimore & Ohio Railroad Co. v. Campbell, 36 Ohio St., 647. That case went up from Guernsey county. The case, as stated in the third syllabus, is this: “A passenger by a railroad train, as soon as practicable after its arrival at the place of destination, presented to the agent in charge of the baggage-room, a check for his baggage, and demanded the same, which baggage he had delivered to the carrier when he took passage on the train. The agent being unable to find the baggage, took the number of the check, and requested the passenger to call again. On the same evening the passenger returned to the depot, but the agent informed him that he had made further search, and the baggage could not be found. Held, that such acts and declarations of the agent were competent evidence for the passenger in his action against the carrier for the loss of such baggage.”
That decision is put upon the ground that it was the declaration of the agent, made at the time and about the business that he was then engaged in. And that case would b8 like the case at bar, if the agent, after he had told that he could not find the baggage, had attempted to declare to the passenger where the baggage had been lost on its way from New York to Cambridge, and that it had been lost through the carelessness or negligence of some employe of the company. It is well settled that an agent or employe, either of a person or corporation, cannot fix a responsibility upon his employer by admitting, after the accident, that he was negligent, or declaring that other employes of the company were negligent. It is the narration of a past event; it is not a part of the res gestae; it is objectionable upon tbat ground, and it is objectionable upon the other ground, that it is not within the scope of bis employment. He is not employed for the purpose of binding the company by his admissions or declarations. But these reports here, even if the written reports had been offered in evidence, are not competent, for the reason that I have indicated; they are hearsay of hearsay, and the fact that the law requires those reports to be made to the commissioner, does not make them competent; that requirement is for a different purpose. The statute does not declare that those reports *520 shall be used iu evidence against the company. Tf the company was to make itself liable for damsges by reason of its reports to the railway commissioner of the state, that Would defeat the purpose of the act.
We think that there was an error in the admission of all that class of testimony as to these written reports. We have not been able to discover definitely from this record, whether the deposition of Archer, who waa an employe or deputy in the railway commissioner’s office, was admitted in evidence, or not; but there is nothing in that deposition that is competent evidence. It is all objectionable upon the grounds that I have indicated.
On page 225, the court charged the jury upon that subject. “In the absence of, and inability of plaintiff to secure the reports made to the company of the injury, verbal testimony thereof was admitted as reflecting on the fact of the injury, who it was, how, where and when occurring. But I think I may say to you, from the evidence and concessions on the trial, that the fact of the injury at the time and place averred, and the death of the decedent therefrom, is not now a matter of dispute; hence your inquiry will be directed at once to the question of liability or non-liability of the defendant, as resting on the question of negligence in issue on all the evidence offered before you on the trial of this case.”
We think that that left these reports to the jury for whatever purpose the jury might see fit to use them, and it was erroneous and misleading; and that the court on that subject, ought to have taken all that evidence from the jury, as he was requested to do in the fourth request to charge made by the defendant in the court below. He asked the court to instruct the jury, that they were not to consider any of the testimony on that subject, but to wholly disregard the same.
On page 112 of the record this occurred, and it is in the examination of the witness Fred. Lonius. and in his direct examination; be was called for the plaintiff below. It can be gathered from his previous examination that he was either an unwilling witness, or at least that counsel for plaintiff below thought he was an unwilling witness. He was asked this question: “Isn’t it a fact that one of.the re *521 quirements of bolding your position is not to tell anything about this accident?” Objected to by defendant. Court: “Well, I want to say this; a company has no right to place any such restrictions upon their employes. They have no right to embarrass a witness by any such rule, nor have no right to discharge them for telling what they know, as the witness is here to tell all he knows about the case, and they have no right to discharge him.” Attorney Bruce: “I won’t press it.” Defendant objected, and excepted to the foregoing remarks made by the court Court: ‘-‘And the presumption being all against this which would be against pressing an inquiry of the kind, of course it don’t make any difference to me whether parties take exceptions or not; it is the court’s views as expressed upon the subject.”
We think that anybody who has had any experience in court proceedings, would agree that those statements, coming from the judge presiding in the trial of the case, and made in the presence of the jury, would be highly prejudicial to the rights of the defendant company. I do not know that it is necessary that this court should attempt to characterize that kind of a statement from the bench. All must concede that it is improper. Has that been cured by anything that occurred later in the trial?
Our attention is called to page 227 of the general charge. After telling the jury that it is their province to determine, the facts, and they must patiently and impartially consider all the evidence, the court continued: “This duty you will perform uninfluenced by the character of the suit, or the parties to the action, or by any side remarks by court or counsel in the course of the trial.”
We have no means of knowing whether twelve men iu a jury-box, after a speech of this kind from the trial judge, when they beard the trial judge, in the closing part of his charge,say to them that they were to disregard any side remarks by the court or counsel, would understand that these remarks were only “side remarks.” Legally, where improper remarks are made in the presence of a jury by the triil judge or by counsel in the argument of the case, tbs effect of that can be cured, in the esse of an attorney, by the prompt apology or retraction; or let the court, being appealed to, absolutely and in unmistakable terms, tell the *522 jury that those remarks are not to be considered; that they are withdrawn from the consideration of the jury, and that the court is to proceed as though those remarks had not been made, I say such error can be cured legally, but all lawyers, as a matter of fact, know it is not cured; that when the prejudicial matter gets to the jury — they once hear the improper remark from whatsoever source it comes — it may be incompetent evidence — I say all lawyers know that when the jury have once heard those remarks or words, that it cannot be taken away from them.
The court in this case, made no effort, except (if it was an effort) in the reference to “side remarks”, to take these matters from the jury. The court, in making these remarks, assumed that this railway company and its employes had been guilty of an attempt to suborn witnesss; to tell witnesses to testify falsely or conceal the truth, by threats to discharge them from their employ. There is nothing in the evidence that warrants any such assumption. If there had been evidence tending to prove that state of facts, it would have been a question for the jury to determine from the evidence, and not for the court to assume that those facts were proved.
We find no prejudicial error in this record as to the admission of the clothing and the shoe. Perhaps as to the clothing, the evidence was not what it should have been as to showing that the clothing was in the same condition at the trial that it was immediately after the accident, but that goes to the weight of the-evidence, and not to its competency. -
As to the charges of misconduct of the jury, both in respect to looking at a frog at the Short Line Railroad, and as to a juror making notes of the testimony, we think that on the affidavits as presented to the trial judge on the motion for a new trial, the court could have found either way, and while it is not necessary to pass upon the question, this court has very serious doubts whether it is improper conduct on the part of a juror to take notes 8S to evidence. This court, and every other court we know of, on questions of fact, makes memoranda as to the evidence before them, and it would seem to us that if it is proper for a member of this dourt, it would be proper for a juror. One is a jury of *523 twelve as triers of fact, and this court in appeal cases op the facta, is a jury of three; but that question is not before the court.
On page 226,in the charge of the court: In this case they showed a book of rules of the company, which was put in evidence, and attention is called especially to the rule of the company that employes were not allowed to couple or uncouple cars while in motion. And after the court had charged the jury expressly that, “if the employe had suffered an injury brought about by tbe violation of the plain instructions of his principal, he cannot be liable therefor. And the same rule applies in this case, that the deceased could not maintain an action for the injury if he had survived— his administratrix cannot — his death did not operate to change this rule. Rut in this connection I call your attention to the rules in evidence and tbe contract of employment, and also to the evidence as to how the switching, coupling and uncoupling of cars was done in tbe yards of the company at and before the accident, and determine whether or not, tbe rule of the company in regard to switching and coupling and uncoupling of cars was by tbe practice there in so doing abrogated.’’
What is the law relating to these rules of tbe company and their abrogation by custom or practice of employes in disobeying the rules, is a matter that we think is very well stated and determined by the United States circuit court of appeals, 80 Federal Reporter. The case begins on page 488, and I read from page 493. And Judge Clark, who announced tbe opinion in that case, is quoting from a case in 1 Circuit Court of Appeals, page 630, and quotes it with approval. “To hold that this defendant company could make this rule on paper, call it to plaintiff’s attention, and give him written notice that he must obey it and be bound by it on one day, and know and acquiesce without compliant or objection in the complete disregard of it by the. plaintiff and all its other employes associated with him on. evry day he was in its service, and then escape liability to, him for an injury caused by its owd breach of duty toward the plaintiff because he disregarded this rule, would be neither good morals nor.good law. Actions are often more' effective than words, and it will not do to say that :,neither *524 the plaintiff nor the jury was authorized to believe, from the long-continued acquiescence of the defendant in this disregard of this rule, that it had been abandoned, and it was not in force. The evidence of such abandonment was complete and ample, and the ruling and charge of the court telow on this subject were right. Citing: Barry v. Railroad Co., 98 Mo., 62; 11 S. W., 308; 18 Fed., 304; 106 Mo., 74; 16 S. W., 924; and to the same effect, see: 122 N. Y., 557; 25 N. E., 915; 12 Miss., 13; 16 South, 248; 101 Mich., 597; 60 N W., 309; 96 Tenn., 128; 33 S. W., 1050.
So far as the evidence in this case at bar was concerned, there was evidence from which the jury might have found that for a Jong time this rule had not been observed by the employes of the company in the yards at Gabon, Ohio; and they could have further found the fact from the evidence, that this utter disregard to the rule was known to the superintendent, servants or employes of the railway company, who were its representatives in and about the Gabon yard; but that the question was not submitted to the jury.
In the charge in this particular he says, you simply determine whether the rule was abrogated by the practice. Without seeing that, they must find first, what the practice was; discover the rule. Second, was that practice known to the superior servants of this decedent? Was it known to the yard-master? Was it known to the agent of the company, or the ticket agent, or whoever was the agent of the company in the control of that yard? That question was not submitted to the jury, but. it is said that that error, if error it be, was cured by the answer to one of the special interrogatories that was submitted to the jury, and that it brought it within the rule laid down by the supreme court in 58 Ohio St., 517, Chase v. Brundage.
The question is this: “Did decedent violate a rule of the company when he passed between the moving cars to uncouple them ?’’ The answer is “No. ” Then the jury goes on: “Testimony shows that rule No. 203 was abrogated by custom and constant violation of said rule.” Now, the latter part of that answer is not responsive to the question. They anéwered the question when they said “No.” They were nót asked there to determine, and they did hot deter *525 mine that the railway company, through iis proper officers, knew of that custom in violation of that rule. And we think the charge is erroneousLin the way I have indicated, bn page 226.
On page 222 of this charge is another matter that I wish to call attention to. In this claim of the plaintiff, after stating the claims in the pleading: “I SB.y to you that there is a statute requiring railroad companies to adjust, fill or block the frogs, switches and guard-rails on its tracks, with the exception of guard rails on bridges, so as to prevent the feet of its employes from being caught therein; these requirements decedent had a right to presume that defendant would observe, and if there was any omission of this dutv, the defendant was chargeable with knowledge thereof.”
It is true, over on page 223, the court says: “You are further instructed that a railway company, as regards its employes, must keep its railway tracks, switches and appliances in a good and safe condition; and if its agents charged with the duty of inspecting and repairing the same, have notice of defects in them, or by any reasonable care and diligence could have learned of them, and omit to make repairs iu consequence of which an employe is injured while he is himself using reasonable care and prudence, then there is a want of such care on the part of the company as the law requires, and the company would be liable for such injuries. ”
The matter on page 222 is inconsistent with what follows, because it says, that because the statute requires a frog to. be blocked, and if the company fails to perform that duty, they are chargeable with knowledge thereof. Now, that depends upon the circumstances. A defective or unblocked frog does not come within the rule of the statute of 1890, 87 Ohio Laws, 149-150, because that applies only to cars and locomotives and the machinery and attachments thereof; that is, the machinery and attachments of ihe cars and locomotives. And the statute says there, if a man.is injured by a defect in either the car or locomotive, or in any of the machinery or attachments of the car or locomotive, that the company is charged with knowledge of that defect, and it makes a prima facie case of negligence on the part of tbe railway company; but so far as a defective frog is con *526 cerned, or any other defect in the road-bed is concerned, the rule is different. In the case of a’ municipal corporation, where it is charged with negligence for a defective street, it must either have actual knowledge from its employes of the defect, or the defect must have existed for such a length of time that knowledge of the defect is presumed, from the opportunity to know of it.
There were some tweny-six requests to charge the jury. I have already spoken of the fourth, and that it should have been given. The third request was given. As we view it,the twelfth request should have been given, “If the decedent, Paul M. Ullom, knew of the defect in the switch or frog from which the injury happened, and yet remained in the service and continued to use the frog or switch without giving notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use, and is not entitled to recover.”
As to these remaining requests, many of them are true as abstract propositions of law, but they have no bearing upon the case at bar, and a number of others we think are not correct statements of the law, because they assume certain facts to be proved, which it was the province of the jury to determine.
The evidence in this case was of such a character that the jury might very well have found that Ullom was injured in the way it was charged in the petition that the proximate cause of his injury was the failure of the railway company to block the frog — iu other words, that he caught his foot in the frog, by reason of which be was killed.
On the question of his contributory negligence, it could be said in behalf of the railway company, that he had been employed there for two or three years as night switchman; that by reason of that employment he had the opportunity, of knowing of the condition of this frog, and that be was chargeable with knowing wbat he might have known by the reasonable exercise of his faculties. On the other hand, it coulc| be claimed with considerable force, that being employed there iu the night season, that unless his attention was particularly called to the condition of the frogs, that he would not know whether they were blocked or unblocked.
We are unable to say that the judgment.of the court be *527 low was not sustained by sufficient evidence, and we do not reverse the judgment on that ground, ,but on the grounds that I have indicated, and we think, in the interest of justice, that the judgment of the court below should be reversed, and the cause is remanded for further proceedings, according to law.
Curtis E. McBride, and James Olds, for Plaintiff in Error.
Mitchell & Bruce, and J. W. Barry, for Defendant in Error.